IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Angela Hammond and Paul Hammond )<br>As Co-Personal Representatives of the )<br>Estate of Zachary Hammond, )<br>                                          )<br>                        Plaintiffs, )<br>                                          )<br>vs.                                    )<br>                                          )<br>City of Seneca Police Department, Mark)<br>Tiller, and John Covington, )<br>                                          )<br>                        Defendants. )<br>_____ ) | Civil Action No. 8:15-cv-04031-MGL-KFM<br><br>**O R D E R** |

This matter is before the court on the motion to quash of defendants City of Seneca Police Department and John Covington ("the moving defendants"). On January 5, 2016, the Honorable Mary Geiger Lewis, United States District Judge, designated the undersigned to hear pretrial matters in this case pursuant to Title 28, United States Code, Section 636(b)(1)(A) (*see* docs. 31, 34).

## BACKGROUND

This case arises from an incident on July 26, 2015, in which the plaintiffs' son[1], Zachary Hammond, was shot and killed by defendant Mark Tiller, an officer with the defendant City of Seneca Police Department. Defendant John Covington is Chief of the Seneca Police Department. The moving defendants' motion to quash concerns a subpoena directed to Complete Public Relations ("CPR") (*see* doc. 19-1). The subpoena seeks, as relevant here, documents associated with CPR's work as a public relations firm retained on August 13, 2015, by Michael J. Smith, Esq., the City Attorney for the City of Seneca (doc. 19-9, Smith aff. ¶¶ 2-3). Mr. Smith states in his affidavit that he hired CPR because he was concerned regarding public confusion arising out of potentially inaccurate

---

[1]The plaintiffs brought this lawsuit as co-personal representatives of Zachary's estate.

and premature statements reported by the media before law enforcement investigations were completed; he was concerned the public confusion could unfairly impact the ensuing civil litigation; the City of Seneca did not possess staff with the expertise to assist with public relations of this kind and to mitigate such concerns; the City of Seneca also did not possess staff to respond to the media's numerous information requests; and hiring CPR allowed the City of Seneca to respond to the public aspects of the incident in an effort to offset any unfair prejudice in the ensuing civil litigation (*id.* ¶ 6).

The moving defendants' motion to quash was filed on November 12, 2015 (doc. 19), and the plaintiffs filed their response on November 24, 2015 (doc. 20). The moving defendants filed a reply on December 4, 2015 (doc. 23). The case was assigned to the undersigned on January 5, 2016, for consideration of pretrial matters (doc. 31). A hearing on the motion to quash was held before the undersigned on February 10, 2016 (doc. 41). The moving defendants were directed to provide the plaintiffs with a revised privilege log (doc. 41). The plaintiffs then filed a supplemental response in opposition to the motion to quash (doc. 45) on February 25, 2016, and the moving defendants filed a reply on March 7, 2016 (doc. 48). Thereafter, on March 8, 2016, the moving defendants were directed to submit the documents at issue in the motion to quash to the undersigned for *in camera* review (doc. 49). That review is now complete.

## APPLICABLE LAW AND ANALYSIS

The attorney-client privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403 (1976) (citation omitted). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir.1982) (citations omitted). Because its application interferes with "the truth seeking mission of the legal process," *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir.1986) (citations omitted), the attorney-client privilege is disfavored. *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997) (citation omitted). Thus, "the privilege is to be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *In re Grand Jury*

*Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984) (quoting *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir.1979)).

The moving defendants argue that certain documents that are responsive to the plaintiffs' subpoena directed to CPR are protected by the attorney-client privilege. "[M]ost if not all of the remaining documents at issue are emails by and between defense counsel and CPR . . . " (doc. 48 at 2). The moving defendants rely on the case of *Grand Canyon Skywalk Dev. LLC v. Cieslak*, Nos. 2:15-cv-011890JAD-GWF & 2:13-cv-00596-JAD-GWF, 2015 WL 4773585 (D. Nev. 2015), in which the District Court of Nevada performed an extensive analysis of numerous decisions addressing whether the attorney-client privilege extends to communications between a client's counsel and a public relations consultant that the client or its counsel hired to assist in ongoing or anticipated legal matters. *Id.* at *9-14. The court found that the cases that support application of the privilege do so on "two grounds that are not necessarily mutually exclusive": (1) the high profile nature of the case and (2) the consultant serves as the "functional equivalent" of the client's employee. *Id.* at *9-11 (citing *In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F.Supp.2d 321, 331 (S.D.N.Y 2003) (holding that "(1) confidential communications (2) between lawyers and public relations consultants (3) hired by the lawyers to assist them in dealing with the media in cases such as this (4) that are made for the purpose of giving or receiving advice (5) directed at handling the client's legal problems are protected by the attorney client privilege"); *F.T.C. v. Glaxosmithkline*, 294 F.3d 141, 148 (D.C.Cir. 2002) (holding that public relations and governmental affairs consultants who assisted a drug manufacturer in a government investigation regarding unfair competition were the functional equivalents of the manufacturer's employees, and therefore the attorney-client privilege extended to communications shared with them);and *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 219-20 (S.D.N.Y.2001) (holding the public relations firm was the functional equivalent of an in-house public relations department of the corporation)). The court in *Grand Canyon* found that the public relations firm in that case should be treated as the functional equivalent of an employee of the client under the factors considered by the cited

cases. *Id.* at *15. The court noted that the public relations services were directed at portraying the opposing side as the party that breached the contract with the client and in portraying the client as having acted properly. There also was no indication that the public relations firm provided general public relations services beyond the legal dispute. Thus, the court found that "the confidential legal advice that [counsel] provided to [the public relations firm] with respect to the legal dispute is within the scope of the attorney-client privilege and is protected from disclosure unless the privilege has otherwise been waived by the [client]." *Id.* at *16.

> Based upon these cited cases, the moving defendants argue:
>
> CPR served as the functional equivalent of an employee by augmenting the City's limited staff, which the Nevada District Court held as warranting the protection of the attorney-client privilege. Just like in *Grand Canyon*, CPR routinely communicated with Attorney Smith when preparing draft press releases, which the Nevada District Court found supportive of the attorney-client privilege under several cases from various jurisdictions. Just like in *Grand Canyon*, Defendants did not have a public relations department, which supported finding the consultant's service as a functional equivalent. Just like in *Grand Canyon*, Attorney Smith, the City, and Covington lacked experience and expertise in dealing with the national media. And, just like in *Grand Canyon*, CPR served as Defendants' public face, which likewise supported a functional equivalence finding. Just like in *Grand Canyon*, then, this Court should also afford attorney-client privilege protections to the communications between CPR and Defendants' attorneys.

(Doc. 19 at 7).

The plaintiffs argue in response that the defendants cite no Fourth Circuit authority recognizing the "functional equivalent of an employee" privilege (doc. 20 at 14). Even more importantly, as argued by the plaintiffs in the hearing, critical to the analysis of whether the communications are protected by the privilege is the consideration of whether the communications were made *for the purpose of obtaining legal advice* from the attorney. As the court found in *In re Grand Jury Subpoenas*, in order to qualify for the attorney-client privilege, the confidential communications at issue between the attorney and public

relations consultant must be "for the purpose of giving or receiving advice [and] directed at handling the client's legal problems." 265 F.Supp.2d at 331.  The court in *In re Grand Jury Subpoenas* case relied on the Second Circuit's decision in *U.S. v. Kovel*, 296 F.2d 918 (2nd Cir. 1961), which concerned the application of the attorney-client privilege to communications with the client's accountant, who was retained by the client's attorney.  The court in *Kovel* concluded that the attorney-client privilege applied to communications between the client and an accountant where the communication was in furtherance of providing legal advice by the attorney. *Kovel*, 296 F.2d at 921.  The court analogized the accountant's role to that of an interpreter of a foreign language. *Id.*  However, the court stated:  "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer.  If what is sought is not legal advice but only accounting services . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." *Id.* at 922.

The court has reviewed the withheld CPR documents *in camera* and finds that the documents are not protected by the attorney-client privilege as the communications were not made *for the purpose of obtaining legal advice*. *See id.*; *In re Grand Jury Subpoenas*, 265 F.Supp.2d at 331.  *See also Haugh v. Schroder Inv. Mgmt. N.A., Inc.*, C.A. No. 02 civ. 7955 DLC, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003) (finding in employment discrimination case that attorney-client privilege did not extend to communications with public relations consultant as there was no showing the communications were necessary for the attorney to provide the client with legal advice and no showing that the communications were anything other than standard public relations services for client).  Rather, the documents here reveal communications regarding monitoring of the media for articles related to the case, drafting press releases and statements on behalf of the City of Seneca, answering media questions on behalf of the City of Seneca, and answering Freedom of Information Act ("FOIA") requests to the City of Seneca, all of which are standard public relations services.  Accordingly, the communications all appear to be made for the purpose of obtaining public relations

services. *See Kovel*, 296 F.2d at 922 ("If what is sought is not legal advice but only accounting services . . . no privilege exists."). "[Public relations] services including review of press coverage, calling media outlets to comment on litigation, and providing general media strategy aimed at protecting public image and reputation generally fall outside the attorney-client privilege." Michael Lasky, *PR Firms Navigate the Attorney-Client Privilege*, PR Week, Nov. 15, 2013, http://www.prweek.com/article/1274090/navigating-attorney-client-privilege. As stated by the court in *Haugh*:

> [Client] has not identified any legal advice that required the assistance of a public relations consultant. For example, she has not identified any nexus between the consultant's work and the attorney's role in preparing [client's] complaint or [client's] case for court. A media campaign is not a litigation strategy.

*Haugh*, 2003 WL 21998674, at *3 (citing C*alvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D. N. Y. 2000) (finding attorney-client privilege did not extend to communications with public relations firm providing ordinary public relations advice)). Similarly, in *AVX Corp. v. Horry Land Co., Inc.*, a judge in this District considered whether the attorney-client privilege extended to communications between the client's attorneys and an environmental consultant. C.A. No. 4:07-cv-3299-TLW-TER, 2010 WL 4884903, at *4-11 (D.S.C. Nov. 24, 2010). The court concluded after an *in camera* review that the plaintiff had failed to meet its burden of showing that the communications "involved gathering information from client confidences or providing information through the consultant to the attorney for the purpose of assisting the attorney in giving legal advice." *Id.* at *10. Based upon the foregoing, the withheld documents are not protected by the attorney-client privilege.

The moving defendants further argue that the withheld documents are protected by the work product doctrine (doc. 19 at 9-10). Federal Rule of Civil Procedure 26(b)(3) protects "things that are prepared in anticipation of litigation," whether they are prepared by a party's attorney, consultant, or other agent. Fed. R. Civ. P. 26(b)(3). This doctrine is premised on the idea that "[n]ot even the most liberal of discovery theories can

justify unwarranted inquires into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).  Here, the undersigned finds that the documents provided for *in camera* review do not come within the work product doctrine of Rule 26.  "That is because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally." *Calvin Klein Trademark Trust*, 198 F.R.D. at 55 (citations omitted).

## **CONCLUSION**

Wherefore, based upon the foregoing, the moving defendants' motion to quash (doc. 19) is denied.  CPR is directed to provide the plaintiffs' counsel with unredacted copies of all documents on the CPR privilege log on or before March 25, 2016.

IT IS SO ORDERED.


March 22, 2016                                               s/Kevin F. McDonald
Greenville, South Carolina                          United States Magistrate Judge